IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JOSHUA HOWARD,<br><br>Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>Defendant. | CIV. NO. 23-00138 JMS-RT<br><br>ORDER REVERSING THE ALJ'S DECISION AND REMANDING FOR FURTHER PROCEEDINGS |

## ORDER REVERSING THE ALJ'S DECISION AND REMANDING FOR FURTHER PROCEEDINGS

### I. INTRODUCTION

Plaintiff Joshua Howard ("Claimant") seeks judicial review under 42 U.S.C. § 405(g) of the final decision of the Acting Commissioner of Social Security, Kilolo Kijakazi ("Commissioner"). The Commissioner adopted Administrative Law Judge David Romero's ("ALJ") September 21, 2022 written decision, finding Claimant not disabled ("Decision"). Claimant argues the ALJ committed legal error in: (1) rejecting Claimant's testimony without specific, clear and convincing reasons; (2) improperly rejecting the medical opinion of Nalani E. Gauen, M.D., regarding Claimant's migraines; and (3) improperly rejecting the medical opinion of Malia L. Thompson, Psy.D., as to Claimant's mental health.

ECF No. 12 at PageID.1753.  Claimant asserts that these harmful errors support reversing the ALJ's Decision and remanding the matter to properly consider his testimony and medical opinions.

The ALJ failed to provide specific, clear, and convincing reasons, supported by substantial evidence, for his finding that Dr. Gauen's medical opinion as to Claimant's migraines was not supported by objective medical evidence. Specifically, the ALJ committed legal error by failing to discuss the supportability factor in the Decision and further, for rejecting Claimant's symptom testimony on migraines.  These errors were not harmless as the ALJ's deficient findings on migraines lead to the determination of not disabled.

The court thus REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings—on an open record —under sentence four of 42 U.S.C. § 405(g).

## II.  **BACKGROUND**

### A.     **The ALJ's Findings and Decision**

In July 2021, Claimant applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416, 423, claiming a disability as of December 23, 2020.  Administrative Record ("AR")[1] 200–227.  He alleged that

---

[1]  The AR is numbered sequentially from pages 1 to 1695 and is available at ECF Nos. 5 and 6.

post-traumatic stress disorder ("PTSD"), manic attacks, anger issues, sleep apnea, depression, anxiety, bipolar disorder, high blood pressure, migraines, carpal tunnel of both wrists, problems in the lumbar and cervical spine, problems in both shoulders, arthritis in the lumbar spine and hips, right elbow bursa, right knee bursa, and tendonitis limit his ability to work.  AR 227.

The Social Security Administration ("SSA") requires an ALJ to assess disability[2] through a five-step sequential analysis, which asks:

> (1)    Has the claimant been engaged in substantial gainful activity?  If so, the claimant is not disabled and not entitled to disability insurance benefits.  If not, proceed to step two.

> (2)    Has the claimant's alleged impairment been sufficiently severe to limit his ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

> (3)    Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled and therefore entitled to disability insurance benefits.  If not, the claimant's residual functional capacity is determined in preparation for step four.

---

[2]  A claimant is "disabled" for purposes of the Social Security Act if (a) he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months," and (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(1)(A) and (d)(2)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

(4)     Does the claimant possess the residual functional capacity to perform his past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*See, e.g.*, *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520 (explaining the five-step sequential evaluation process used to decide whether a claimant is disabled), 416.920 (same)); *see also Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (stating that the 2017 revised Social Security regulations do not alter the familiar "five-step sequential evaluation process," and that the purpose of 20 C.F.R. § 404.1520(a)(1) is to explain that process).  For steps one through four, the burden of proof is on the claimant, and if "a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the claimant reaches step five, the burden shifts to the Commissioner. *Id*.

At Step 1, the ALJ found that Claimant has not engaged in substantial gainful activity since December 23, 2020, the alleged onset date of the claimed disability.  AR 20.  At Step 2, the ALJ found Claimant's severe impairments to be:

4

degenerative disc disease of the lumbar spine; status post open reduction and external fixation of the right humeral shaft fracture; chondromalacia patella of the right knee; migraine headaches; bipolar disorder; anxiety disorder; and PTSD.  *Id.*  The ALJ found Claimant's other impairments—hypertension, sleep apnea, testosterone deficiency/erectile dysfunction/hypogonadism, hearing loss and tinnitus, difficulty hearing and understanding speech, carpal tunnel syndrome, difficulty using his hands, and post open reduction and external fixation of the right humeral shaft fracture[3]—non-severe.  AR 21.

 At Step 3, the ALJ found that Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1").  AR 21.  Claimant's listed impairments include:[4] (1) musculoskeletal system

---

[3] The ALJ explained that he accommodated Claimant's post open reduction and external fixation of the right humeral shaft fracture—which was found to be severe—by limiting to "frequent reaching and handling with the right upper extremity," thus changing his finding to non-severe.  *Compare* AR 20 ("claimant has the following severe impairments: . . . status post open reduction and external fixation of the right humeral shaft fracture"), *with* AR 21 ("the undersigned accommodated the claimant's residual limitations status post open reduction and external fixation of the right humeral shaft fracture with the limitation to frequent reaching and handling with the right upper extremity, as discussed in detail below.  The undersigned finds these impairments non-severe . . . .").

[4] Listed impairments "describe[] for each of the major body systems impairments that [the SSA] consider to be severe enough to prevent an individual from doing any gainful activity, regardless of . . . age, education, or work experience."  20 C.F.R. § 404.1525(a).  A claimant's impairment is "medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment."  20 C.F.R. § 404.1526(a); *see also* Evaluating Cases Involving Primary Headache Disorders, 84 Fed. Reg. 44667, 44670–71 (Aug.

(continued . . .)

disorders; (2) neurological disorders; (3) mental disorders; and (4) migraines, which is considered a primary headache disorder[5] but has no Appendix 1 listing and is therefore considered in accordance with Social Security Ruling 19-4p, Evaluating Cases Involving Primary Headache Disorders, Evaluating Cases Involving Primary Headache Disorders, 84 Fed. Reg. 44667, 44670–71 (Aug. 26, 2019) ("SSR 19-4p").[6]  AR 21–22.

In preparation for Step 4, the ALJ stated that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" pursuant to 20 C.F.R. § 404.1529 (explaining how the SSA evaluates symptoms, including pain) and Evaluation of Symptoms in Disability Claims, 81 FR 14166 (Mar. 16, 2016) ("SSR 16-3p") (symptoms in disability claims).  AR 24.  He stated that he also considered the medical opinions and prior administrative medical findings pursuant

---

26, 2019) ("SSR 19-4p") (finding "a primary headache disorder, alone or in combination with another impairment(s) medically equals a listing").  When a claimant's impairment(s) meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), the claimant is considered disabled without considering his age, education, and work experience.  20 C.F.R. § 404.1520(d).

[5]  Primary headaches occur independently and are not caused by another medical condition, while secondary headaches are symptoms of another medical condition.  SSR 19-4p, 84 Fed. Reg. at 44669; s*ee also Tamra A.W. v. Kijakazi*, 2023 WL 2784854, at *6 (D. Kan. Apr. 5, 2023).

[6]  "Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and are to be relied upon as precedents in adjudicating cases."  *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (citation omitted); *see also* SSR 19-4p, 84 Fed. Reg. at 44668.

to 20 C.F.R. § 404.1520c (explaining how the SSA considers and articulates

medical opinions and prior administrative medical findings for claims filed on or

after March 27, 2017).  *Id*.  The ALJ indicated that he considered Claimant's

mental and physical limitations in arriving at residual functional capacity and its

exceptions.  *See* AR 25–31.

Accordingly, the ALJ found that Claimant had the residual functional

capacity to perform light work with exceptions.  AR 24.  At Step 4, the ALJ found

Claimant unable to perform any past relevant work as an able seaman, firefighter,

or electronics mechanic.  AR 34.  Finally, at Step 5, the ALJ determined that

Claimant can perform—as confirmed by a vocational expert—jobs that exist in

significant numbers in the national economy, such as photocopy machine operator,

housekeeping cleaner, and collator operator.  AR 35; *see also* AR 59–60

(vocational expert testimony).  The ALJ thus determined that Claimant is not

disabled.  AR 35–36.

## B.    Procedural Background

On September 20, 2021, the Commissioner denied Claimant's claim

and on November 17, 2021, denied the claim on reconsideration.  AR 90–93, 96–

99.  Claimant timely requested a hearing that took place on September 1, 2022, at

which Claimant and vocational expert, John J. Komar, Ph.D., testified.  AR 105–

106; 42–62.  On September 21, 2022, the ALJ issued his Decision finding

Claimant not disabled.  AR 15–36.  The Appeals Council denied Claimant's request for review on January 20, 2023, which rendered the ALJ's Decision the final decision of the Commissioner.  AR 1–4.  On March 19, 2023, Claimant commenced this action for judicial review.  ECF No. 1.

Claimant filed his Opening Brief on June 19, 2023.  ECF No. 12. The Commissioner filed an Answering Brief on July 19, 2023.  ECF No. 14. Claimant filed a Reply Brief on August 2, 2023.  ECF No. 15.  The court held oral argument on September 5, 2023.  ECF No. 16.

### III.  <u>STANDARD OF REVIEW</u>

Congress has provided a limited scope for judicial review of the Commissioner's decision to deny benefits under the Social Security Act.  *See* 42 U.S.C. § 405(g).  "For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Treichler v. Comm'r of Soc. Sec. Admin*., 775 F.3d 1090, 1098 (9th Cir. 2014) (internal quotation marks and citation omitted).

Guided by this principle, courts employ "three important rules" when assessing an ALJ's decision. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir.

2015).  First, courts "'leave it to the ALJ to determine credibility,[7] resolve conflicts in the testimony, and resolve ambiguities in the record.'"  *Id*. (quoting *Treichler*, 775 F.3d at 1098).  Second, courts will "disturb the Commissioner's decision to deny benefits 'only if it is not supported by substantial evidence or is based on legal error.'"  *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-523 (9th Cir. 2014) (internal quotation marks and citation omitted).  If the evidence is "susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."  *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  And third, even where the ALJ commits legal error, courts uphold the ALJ's decision if that error is harmless.  *Brown-Hunter*, 806 F.3d at 492.  An error is harmless if it is "'inconsequential to the ultimate nondisability determination'" or if "despite the legal error, 'the agency's path may reasonably be discerned, even if the agency

---

[7]  In March 2016, the Social Security Administration eliminated use of the term "credibility" from its sub-regulatory policy, clarifying that "subjective symptom evaluation is not an examination of an individual's character," but "rather is an evidence-based analysis of the administrative record to determine whether the nature, intensity, frequency, or severity of an individual's symptoms impact his or her ability to work."  SSR 16-3p, 81 FR 14166, 14167 & n.1.

explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1099).

Nevertheless, "[a] clear statement of the agency's reasoning is necessary because we can affirm the agency's decision to deny benefits only on the grounds invoked by the agency." *Id.* (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)).  Consequently, "a reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* (citing *Stout*, 454 F.3d at 1054); *see also Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (stating that a district court may not find harmless error by "affirm[ing] the agency on a ground not invoked by the ALJ").

The court is instead "constrained to review the reasons the ALJ asserts," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), because "[i]f the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly 'substitut[ing] our conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions.'" *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at 1103).  Thus, "[b]ecause we cannot engage in such substitution or speculation, such error will usually not be harmless." *Id.*

# IV.  DISCUSSION

Claimant raises several issues for review.  Because it is dispositive, the court addresses only the basis of remand: the ALJ's failure to properly evaluate the persuasiveness of Dr. Gauen's medical opinion as to Claimant's prostrating migraines and the ALJ's rejection of Claimant's migraine testimony.

## A.    The ALJ Failed to Properly Evaluate the Persuasiveness of Dr. Gauen's Opinion on Migraines

The revised Social Security regulations—which, like in this case, apply to claims filed after March 27, 2017—precludes an ALJ from deferring to or giving "any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."  20 C.F.R. § 404.1520c(a) (explaining how the SSA considers medical opinions and prior administrative medical findings).[8]  And while an ALJ must articulate how persuasive he found all the medical opinions[9] or

---

[8]  Prior to the revised regulations, ALJs were required to give greater weight to the opinions of treating physicians than to the opinions of examining physicians, and to assign greater weight to opinions of examining physicians than to opinions of non-examining physicians.  *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995), *superseded on other grounds by regulation*, Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5852 (Jan. 18, 2017) (codified at 20 C.F.R. pts. 404 & 416), *as recognized in Woods*, 32 F.4th at 789–90).  Under this pre-2017 standard, an ALJ was required to provide "specific and legitimate" reasons to reject the opinion of a treating or examining doctor.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 830–31).

[9]  "A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or

(continued . . .)

all the prior administrative medical findings,[10] 20 C.F.R. § 404.1520c(b), he may do so in a single analysis considering certain factors; that is, he is not "required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id*. at § 404.1520c(b)(1).[11] Those factors an ALJ must consider are a medical opinion's supportability, its consistency, and the relationship between the source and the claimant, among others. *Id*. at § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important factors an ALJ must consider—and explain they were considered—when determining how persuasive the ALJ finds a medical opinion or prior administrative medical finding. *Id*. at § 404.1520c(c)(1) and (2);[12] *see also Woods*, 32 F.4th at 792 (quoting 20

---

restrictions . . . ." 20 C.F.R. § 404.1513(a)(2); *see also Woods*, 32 F.4th at 789 n.2 ("Medical opinions" is comprised of evidence from any "acceptable medical source": medical professionals other than physicians, such as psychologists and certain advanced practice nurses and physician assistants (citing 20 C.F.R. § 404.1502(a)(2), (7), (8); *id*. § 404.1527(a)(1) (former regulation defining "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s)"); *id*. § 404.1521 (current regulation requiring "objective medical evidence from an acceptable medical source")).

[10] "A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review in your current claim based on their review of the evidence in your case record . . . ." 20 C.F.R. § 404.1513(a)(5) (describing categories of evidence).

[11] Although the regulations permit the ALJ to consider all medical opinions or prior administrative medical findings in one analysis, the ALJ addresses only Dr. Gauen's—and no other physicians'—medical findings on Claimant's migraines.

[12] "We will consider the following factors when we consider the medical opinion(s) and
(continued . . .)

12

C.F.R. § 404.1520c(b) and (b)(2) ("The agency must 'articulate . . . how

persuasive' it finds 'all of the medical opinions' from each doctor or other source,

and 'explain how [it] considered the supportability and consistency factors' in

reaching these findings.")); *see also Kitchen v. Kijakazi*, – F.4th –, 2023 WL

5965704, at *5 (9th Cir. Sept. 14, 2023). "Supportability means the extent to

which a medical source supports the medical opinion by explaining the 'relevant . .

. objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R.

§ 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is

'consistent . . . with the evidence from other medical sources and nonmedical

sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

     *Woods* determined that the former requirement that an ALJ was to

provide "specific and legitimate reasons for rejecting a treating or examining

doctor's opinion . . . is incompatible with the revised regulations." *Id*. (internal

quotation marks omitted). Now, under the revised regulations, an ALJ must

---

prior administrative medical finding(s) in your case:

    (1) Supportability. The more relevant the objective medical evidence and
    supporting explanations presented by a medical source are to support his or her
    medical opinion(s) or prior administrative medical finding(s), the more persuasive
    the medical opinions or prior administrative medical finding(s) will be.

    (2) Consistency. The more consistent a medical opinion(s) or prior administrative
    medical finding(s) is with the evidence from other medical sources and
    nonmedical sources in the claim, the more persuasive the medical opinion(s) or
    prior administrative medical finding(s) will be."

20 C.F.R. § 404.1520c(c)(1) and (2).

articulate his reasoning, addressing how he considered the consistency and supportability factors. *Robert D. v. Kijakazi*, 2021 WL 5905734, at *4 (S.D. Cal. Dec. 14, 2021), *report and recommendation adopted*, 2022 WL 62908 (S.D. Cal. Jan. 6, 2022) (citations omitted). And he "must do so in sufficient detail to allow a reviewing court to determine whether that reasoning is free of legal error and supported by substantial evidence." *Id*. (citing *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020)).

Here, although the ALJ mentioned Dr. Gauen's medical opinion that Claimant is "unable to perform sedentary or physical tasks during migraine episodes" and that Claimant "has characteristic prostrating attacks of migraine/non-migraine headache pain more frequently than once per month," AR 33 (*see* boldface sentence #1 below), the ALJ failed to provide any supportability analysis. *See Woods*, 32 F.4th at 792 (citing 20 C.F.R. § 404.1520c(b)(2) (stating that the ALJ must "explain how [s/he] considered the supportability and consistency factors" in reaching his/her findings)). In the following dense passage, the ALJ addressed Dr. Gauen's medical opinions:

> In a May 22, 2021 VA DBQ (16F/1-255), Nalani Gauen, MD opined that the claimant had limited bending, lifting, crouching, or crawling (16F/162), due to a lumbosacral strain (16F/149, 162), with abnormal spinal range of motion (16F/151), without positive straight leg raise or radiculopathy (16F/158); limited running, kneeling, crouching, and crawling (16F/230), due to right knee strain (16F/213), with decreased range of motion

(16F/216-217); no use of assistive devices (16F/62, 160, 229-230); limited lifting and carrying (16F/96), due to right shoulder strain (16F/79), and pain with range of motion (16F/82), but negative impingement signs (16F/90-91); limited pushups and lifting and carrying (16F/124), due to bilateral lateral epicondylitis (16F/109), with abnormal range of motion (16F/113); and limited repetitive gripping, handling (16F/76), due to bilateral carpal tunnel syndrome, with positive Phalen and Tinel's signs bilaterally (16F/69), but otherwise normal nerves in the bilateral upper and lower extremities (16F/72-75), normal range of motion of the hands and fingers (16F/167, 170), and full 5/5 hand grip bilaterally (16F/180).  **[(1)] Dr. Gauen also noted the claimant is unable to perform sedentary or physical tasks during migraine episodes** (16F/194); and no limitations resulting from the following conditions: obstructive sleep apnea, (16F/188, 190); temporomandibular joint dysfunction (TMJ)/dental conditions, scars, throat/nose/larynx, muscle injuries, erectile dysfunction, hemorrhoids, wrist conditions, hand/finger conditions, dermatitis/eczema, hypertension, and flat feet (16F/10, 19, 32, 52, 63, 105, 126, 147, 185, 206, 210, 245).  **[(2)] The undersigned does not find the opinion persuasive since the limitations are undefined, and not well supported by Dr. Gauen's exam findings** of no positive straight leg raise and no radiculopathy (16F/158); no use of assistive devices (16F/62, 160, 229-230); negative impingement signs (16F/90-91); normal range of motion of the hands and fingers (16F/167, 170); and full 5/5 hand grip bilaterally (16F/180).  The limitations are also inconsistent with lumbosacral and knee imaging showing no more than minimal/mild findings (1F/65, 139; 3F/81; 12F/150); and exam findings of normal gait (6F/67; 12F/136, 174); normal/intact sensation (3F/54, 110, 123; 6F/62; 12F/136, 149, 189); full 5/5 strength (3F/54, 123; 12F/136, 149, 174,189); intact musculoskeletal range of motion (12F/136, 174); and moving the upper extremities

well (e.g., 12F/118).  **[(3)] As for the migraine-related inability to perform sedentary/physical tasks during migraine episodes, the provision is inconsistent with longitudinal neurological findings** showed the claimant was alert and oriented and cranial nerves 2-12 intact (3F/54, 71, 73-75, 79, 110, 123; 6F/67; 12F/136, 149, 174, 189); normal head and cervical imaging (1F/59-60); and the claimant's report of wide ranging activities including cliff diving, snorkeling, and hiking (3F/77, 79; 15F/3).  The undersigned accommodated the claimant's migraine related symptoms to the extent consistent with the evidence, with the limitations to: no ropes, ladders, or scaffolds; no more than occasional exposure to high exposed places, moving mechanical parts, and vibration; can tolerate a moderate noise intensity level as defined in the DOT; and can tolerate (occasional) exposure to light brighter than that typically found in an indoor work environment, such as an office or retail store; and cannot tolerate demanding work pressures such as high volume output, very short deadlines, or high levels of precision.

AR 33 (boldface added).  In the section immediately preceding boldface sentence #2 ("[t]he undersigned does not find *the opinion* persuasive . . ."), the ALJ recited at least two of Dr. Gauen's medical opinions: (1) on Claimant's physical limitations (bending, lifting, crouching, crawling, etc.); and (2) on Claimant's inability to perform sedentary or physical tasks during migraine episodes.  Thus, as written it is unclear to the court which medical opinion (that is, the singular opinion referenced in boldface sentence #2) the ALJ found unpersuasive.

But in context it appears that the reference to the "opinion" that the ALJ found unpersuasive (a supportability finding) applies only to physical limitations, not migraines.  First, the ALJ listed several limitations he found

16

unsupported, and that list does not include a reference to migraines.  Second, after discussing the opinion(s) he found unpersuasive, the ALJ then began a discussion of migraines in boldface sentence #3.  In other words, the ALJ discussed physical limitations and migraines separately.

Further, in finding Dr. Gauen's medical opinion on migraines "inconsistent with longitudinal neurological findings" (again, boldface sentence #3) the ALJ simply listed objective medical findings and Claimant's self-reported activities and expected the court to connect the dots, without stating his actual determination as to migraines: "claimant was alert and oriented and cranial nerves 2-12 intact (3F/54, 71, 73-75, 79, 110, 123; 6F/67; 12F/136, 149, 174, 189); normal head and cervical imaging (1F/59-60); and the Claimant's report of wide ranging activities including cliff diving, snorkeling, and hiking (3F/77, 79; 15F/3)."  AR 33.  The ALJ failed to explain how being "alert and oriented" with "intact" cranial nerves, and "normal head and cervical imaging" supports the absence of prostrating migraines.  "[H]eadaches typically do not have clinical findings," *Sandra M. v. Comm'r, Soc. Sec. Admin*., 426 F. Supp. 3d 647, 658 (D. Or. 2019), and Dr. Gauen diagnosed Claimant with "characteristic prostrating attacks of migraine . . . headache pain" even though Claimant has no "other pertinent physical findings, complications, conditions, signs or symptoms related"

to these migraines.  *See* AR 1614.  The ALJ ignored this part of Dr. Gauen's report.[13]

Likewise, as discussed below, the ALJ failed to articulate how Claimant's "wide ranging activities" somehow preclude the presence of migraines which prevent Claimant from performing sedentary or physical tasks "more frequently than once per month."  AR 1615.  Although the ALJ may have stated an inconsistency rationale as to Dr. Gauen's medical opinion and the objective medical findings, the ALJ failed to explain, conversely, the lack of support for Dr. Gauen's opinions in his analysis.

Under the revised regulations, district courts often remand matters where an ALJ fails to adequately engage in the supportability analysis.  *See Robert D.*, 2021 WL 5905734, at *6 (collecting cases); *see also id*. at *8 (finding a cursory statement on the supportability factor insufficient when there was objective medical evidence in the record that may have supported a medical opinion when combined with the plaintiff's complaints); *Dalton v. Kijakazi*, 2023 WL 2480806, at *6 (E.D. Cal. Mar. 13, 2023) (finding that because the ALJ did not address supportability, the assessment was not supported by substantial evidence); *Rhonda*

---

[13]  "Primary headaches occur independently and are not caused by another medical condition."  SSR 19-4p, 84 Fed. Reg. at 44669.  "Accordingly, the SSA must consider a combination of findings reported by an acceptable medical source when establishing migraines as a medically determinable impairment.  *Id.*.  In ignoring portions of Dr. Gauen's medical report, the ALJ's analysis of Claimant's migraines does not reflect an evaluation of Dr. Gauen's diagnosis and findings pursuant to SSR 19-4p.

*C. v. Kijakazi*, 2023 WL 2060708, at *3 (E.D. Wash. Feb. 16, 2023) (holding that the ALJ's failure to articulate his supportability findings or cite to supporting evidence in a way that would permit the court to determine whether such findings are supported by substantial evidence constitutes reversible legal error); *Amber K. v. Kijakazi*, 2022 WL 17246531, at *5 (E.D. Wash. Aug. 5, 2022) (finding the ALJ's consideration of consistency factor, but not supportability factor, required reversal). These holdings are consistent with the regulations—"We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings . . . ." 20 C.F.R. § 404.1520c(b).

The ALJ committed legal error in failing to analyze the supportability of Dr. Gauen's medical opinion. Had the ALJ done so, he could not have ignored Claimant's inability to do sedentary or physical tasks one- to two-days per month due to prostrating migraines. This error ultimately affected the ALJ's finding of not disabled. Consequently, the ALJ'S error is rendered not harmless and requires reversal. *Treichler*, 775 F.3d at 1099.

**B.    The ALJ Failed to Properly Evaluate Claimant's Subjective Statements Regarding Pain and Symptoms**

"An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. First, the ALJ must determine whether the claimant has presented objective medical

evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quotation marks omitted). "At this step, the medical evidence need not corroborate the severity of the alleged symptoms; the medical evidence need only establish that the impairment could reasonably be expected to cause some degree of the alleged symptoms." *Id.* (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

Next, "provided 'there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so.'" *Id.* at 1112 (quoting *Garrison*, 759 F.3d at 1014–15). An "ALJ may not 'reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.'" *Smartt*, 53 F.4th at 494–95 (quoting *Burch v. Barnhart*, 400 F.3d 679, 681 (9th Cir. 2005)). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (citation and internal quotation marks omitted)).

20

In fact, "'[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id*. (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation and internal quotation marks omitted)); *see also Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must *explain* what evidence undermines the testimony.") (emphasis added); *cf. Johns v. Berryhill*, 2019 WL 1453482, at *1 (D. Haw. Apr. 2, 2019) (reversing and remanding Commissioner's decision because ALJ failed to properly "specifically identify" and discuss Plaintiff's pain and symptom testimony in rejecting her testimony and finding her not disabled).

At the first step in the credibility analysis, the ALJ found that Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." AR 25.  He mentioned Claimant's allegations of "frequent migraines/headaches" and that, due to migraines specifically, "he . . . must take up to two days off per month with medications."  AR 28.  In the second step of the credibility analysis, the ALJ found that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence . . . ."  AR 25.  However, the ALJ did not give specific, clear and convincing reasons to reject

Claimant's testimony about the severity of his migraine symptoms, nor does the

ALJ address the fact that Claimant must take up to two days off per month with

medications.  AR 1613–15.

   Instead, similar to how he rejected Dr. Gauen's medical opinion, the

ALJ attempted to discredit Claimant's symptom testimony with lists of objective

medical findings without explaining how they demonstrate the absence of

migraines:

> Despite the frequency, intensity, and limiting effects of
> the claimant's reported migraines and related neck pain,
> longitudinal neurological findings showed the claimant
> was alert and oriented and cranial nerves 2-12 intact
> (3F/54, 110, 123; 6F/67; 12F/136, 149, 174, 189).  A
> March 13, 2021 head CT scan showed no abnormalities
> (1F/59).  A March 13, 2021 cervical CT scan showed
> intact, adequate disc space, and normally aligned facet
> joints (1F/60).  A March 13, 2021 exam findings showed
> no deformity or tenderness of the cervical spine (1F/70).
> An April 17, 2021 exam showed normal range of motion
> of the cervical spine (1F/8).  May and November 2021
> treatment notes showed migraine prophylaxis
> medication, but cranial nerves II-XII intact (3F/71, 73–
> 75, 79) . . . .

AR 31.  In other words, the ALJ rejected Claimant's subjective complaints of

migraine pain without elaborating how—or where in the medical records it is

specifically stated—that "intact" cranial nerves, "normal" cervical spine, "deformity or tenderness of the cervical spine" mean the absence of migraines.[14]

Furthermore, the ALJ wrongly attributed Claimant's migraines to "neck pain" without differentiating "migraines" and "headaches": "[I]n May 2021, he reported he has neck pain which sometimes triggers his headaches . . . ," AR 31; "[C]laimant also reported pain in lower back, hips, knees, and joints, and frequent migraines/headaches," AR 28.  The ALJ seemingly ignores the medical records that suggest they are different conditions.  *Compare* AR 31 (ALJ noting medical records in which Claimant "reported he has neck pain which sometimes triggers his headaches"), *with* AR 31 (medical record reporting "Headaches daily" *and* "Migraines 1x/week") and AR 31 ("November 24, 2021 acupuncture treatment notes showed he reported he had been taking daily medications to subdue the migraines, and had two to three per week, but did not actively have a headache *or* migraine (12F/219)").  Moreover, the medical records often do not differentiate headaches from migraines.  *See, e.g.*, AR 1229 (same November 24, 2021 medical record reporting "[c]urrently has 2-3 [migraine or headache—unspecified—per] week, but does not actively have a headache or migraine").  The ALJ failed to address this difference.  *See Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996),

---

[14]   And again, primary headaches occur independently and are not caused by another medical condition.  SSR 19-4p, 84 Fed. Reg. at 44669.

*superseded by statute, in part, on unrelated grounds*, 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (holding that the ALJ's failure to fully develop the record and the rejection of medical testimony without substantiated grounds for doing so constituted legal error).

Similarly, the ALJ found Claimant's subjective complaints of migraine pain (and consequent periods of "near complete inactivity") inconsistent with his "wide ranging" activities, such as cliff diving, snorkeling, and hiking.  AR 29, 33.  But the ALJ failed to provide specific, convincing and clear reasons why Claimant's inability to do any activities one- to two-days out of the month would preclude his ability to do any other activity the rest of the month.  In other words, "the record does not support a lack of consistency."  *See Mize v. Comm'r of Soc. Sec. Admin.*, 2023 WL 2727823, at *3 (D. Ariz. Mar. 31, 2023).

> The court recognizes that
>
> [w]hile a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting.  Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

*Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (citations and internal quotation marks omitted) *superseded on other grounds by* 20 C.F.R.

§ 404.1502(a)).  But Claimant's reported activities in May 2021 of snorkeling and cliff diving, AR 569, 660, predate his complaints in September 2021 (AR 245–46) and November 2021 (AR 280–83) of decreasing ability to engage in personal care, hobbies, and outdoor activities and more frequent migraines ("[Migraines]:  Has had them regularly since last week, about 50% of the week.").  AR 1225.  The ALJ again cherry picks the record to support his findings but the Decision—specifically on Claimant's prostrating migraines—does not "reflect a rationale that has 'the power to convince'" why Claimant's subjective symptoms, along with Dr. Gauen's medical opinion, should be rejected.  *Smartt*, 53 F.4th at 499.

Without an explanation as to how the objective findings contradict Claimant's allegations of migraine symptoms, given the conflation between headaches and migraines, and not accounting for the limiting effects of migraines specifically, the court must—improperly—guess at the ALJ's rationale in purportedly accommodating Claimant's migraines:

> Based on the above evidence of migraine headaches, pain, and light sensitivity requiring migraine prophylaxis medications, the undersigned limited the claimant to: no ropes, ladders, or scaffolds; no more than occasional exposure to high exposed places, moving mechanical parts, and vibration; can tolerate a moderate noise intensity level as defined in the DOT; and can tolerate (occasional) exposure to light brighter than that typically found in an indoor work environment, such as an office or retail store.

25

AR 31.  "Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the [residual functional capacity.]"  SSR 19-4p, 84 Fed. Reg. at 44671.

The ALJ committed legal error in failing to address Claimant's migraine diagnosis or the limiting effects of migraines in determining residual functional capacity.  This error was not harmless.  The ALJ's failure to incorporate Claimant's testimony resulted in a residual functional capacity that is "incomplete, flawed, and not supported by substantial evidence," *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012) (internal quotation marks and citations omitted) ("Where the ALJ has found a severe medically determinable impairment at step two of the sequential analysis, all medically determinable impairments must be considered in the remaining steps of the sequential analysis."), and ultimately the disability determination.  If the ALJ had done so, he would have eliminated any positions that exist in significant numbers, as did the vocational expert when presented with a hypothetical individual matching Claimant's profile.[15]  *Mize*, 2023 WL 2727823, at *3; *see also* AR 60 (vocational expert stating that such a hypothetical individual's limitations "would preclude all employment possibilities.").  Because the court must review an ALJ's decision "based on the reasoning and factual

---

[15] "[A]bsent more than two days per month, and off task more than 15% of the workday, due to flares of migraine headaches, back and joint pain, and manic episodes . . . ."  AR 60.

findings offered by the ALJ," *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1225 (9th Cir. 2009), and is not permitted "to augment an evidentiary record left open, incomplete, or unaddressed," *Sadira D. v. Comm'r of Soc. Sec.*, 2023 WL 3168616, at *2 (W.D. Wash. May 1, 2023), remand for further administrative proceedings is necessary.

## V.  **CONCLUSION**

For the foregoing reasons, the court REVERSES the ALJ's Decision and REMANDS this action to the ALJ for further proceedings consistent with this Order.  The Clerk of Court is instructed to close the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, September 20, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Howard v. Kijakazi*, Civ. No. 23-00138 JMS-RT, Order Reversing the ALJ's Decision and Remanding for Further Proceedings